IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMMY DUBOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-259-M |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Weighing 300 pounds and suffering chronic back pain, Ms. Tammy Dubois claimed a disability and requested supplemental security income. The Social Security Administration denied the request and Ms. Dubois seeks judicial review. This review involves two questions:

1.    The first question involves the interplay between an administrative finding and a regulation. The finding consisted of the Plaintiff's need to use a wheelchair, and the regulation requires the administrative law judge to address the ability to effectively ambulate without an assistive device. The judge apparently viewed the finding and regulation as unrelated, but we do not know why. The two could have been related because the need to use a wheelchair might have affected Ms. Dubois's ability to effectively ambulate without an assistive device. The ALJ did not say one way or another because she misstated the question: Instead of asking whether the Plaintiff could effectively ambulate without an

assistive device, the ALJ asked whether the Plaintiff could ambulate at all.  Did the ALJ err by failing to explain whether the ability to ambulate would have been effective without an assistive device such as a wheelchair?

*Yes*.   The ALJ could have found an inability to effectively ambulate once she determined that Ms. Dubois needed a wheelchair.  The ALJ avoided that question; and without knowing her answer, the Court cannot conduct meaningful review over the administrative decision.

2.      One psychologist suspected mental retardation and proposed an I.Q. test; but the Social Security Administration ignored the request and determined that Ms. Dubois did not satisfy the listing for mental retardation.  Did the agency adequately develop the record on the Plaintiff's intelligence level notwithstanding the failure to order I.Q. testing?

*No*.   Without the I.Q. test, the agency had no evidence to determine whether Ms. Dubois satisfied the regulatory listing for mental retardation.

<u>Listing 1.04 and the Element of Ambulation</u>

The ALJ found that the Plaintiff was obese and suffered chronic pain in her lower back.[1]  These findings triggered a duty to consider whether the combination of Ms. Dubois's obesity and back ailment was equivalent to one of the regulatory *listings*.[2]  Here the dispute

---

[1]      R. at p. 14.

[2]      *See* Social Security Ruling 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049, at 4-5 (Sept. 12, 2002).

involves Listing 1.04; and to qualify under subpart "C," the claimant must be unable to *effectively* ambulate.[3]

Although the ALJ considered this listing, she omitted the adverb *effectively* when she said that the obesity did not *result*[] *in an inability to ambulate*.[4]  The omission of the adverb *effectively* proved significant because the agency's examples of *ineffective ambulation* could include wheelchair-bound claimants like Ms. Dubois.

The regulations define *ineffective ambulation* as *insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities*.[5]  For effective ambulation, the claimant *must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living*.[6]

Under these definitions, the ALJ had to determine whether Ms. Dubois could ambulate independently without a hand-held device.  This assessment could have been affected by the ALJ's finding on Ms. Dubois's need for a wheelchair.[7]

The ALJ could conceivably have reconciled the two findings, but we do not know from her opinion whether she did.  The ALJ said the Plaintiff needed a wheelchair, and this

---

[3]    20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(C).

[4]    R. at p. 18.

[5]    20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1).

[6]    20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2).

[7]    R. at p. 20.

need might have qualified for a disability under the listing.[8]  The lack of explanation leaves us unable to discern whether the ALJ misunderstood the standard or thought Ms. Dubois could walk most of the work-day without a wheelchair.  Without knowing how the ALJ reached a decision on Listing 1.04, the Court must reverse and remand for further findings at step three.

Listing 12.05(C) and the Absence of I.Q. Testing

In denying the application, the administrative law judge also found implicitly that the Plaintiff did not meet or equal the requirements of Listing 12.05(C).  This listing requires: (1) evidence of the onset of mental retardation before age 22, (2) a valid IQ score of 60 to 70, and (3) a severe physical or mental impairment in addition to mental retardation.[9]  In the administrative proceedings, Ms. Dubois's attorney requested an I.Q. test.[10]  The ALJ issued her decision without ordering I.Q. testing and the record was inadequate for a decision on Listing 12.05(C).

---

[8]      *See Murdock v. Astrue*, 458 F. App'x 702, 704-05 (10th Cir. 2012) (the ALJ's finding on physical capacity –  that the claimant required a walker to ambulate for distances greater than 100 feet – constituted sufficient *evidence of an inability to ambulate effectively* for purposes of the musculoskeletal listings).

[9]      *See Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (discussing Listing 12.05(C)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

[10]      R. at p. 161.

To trigger a need for further testing, the plaintiff must present enough evidence to suggest a *reasonable possibility* of a severe impairment and show that the test results would be *necessary or helpful* to assess an impairment.[11]

Even without an I.Q. test, the administrative law judge might have been able to decide whether Ms. Dubois had a severe mental or physical impairment.  But how could the ALJ have determined whether the Plaintiff had an I.Q. score between 60 and 70 or evidence of mental retardation before age 22?  The ALJ did not point to any evidence on these issues, and none is readily apparent.

A psychologist (Kara Rodgers) suggested one way to obtain evidence that could allow a meaningful decision on these elements – I.Q. testing.[12]  Without a record of such testing, the psychologist made a *rule-out* diagnosis of mild mental retardation.[13]  The rule-out diagnosis meant that the psychologist suspected mental retardation.[14]

Without an I.Q. test, Dr. Rodgers based her suspicion on observations of:

- child-like behavior and speech,

- inability to spell the word *world*,

---

[11]   *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

[12]   R. at p. 248 (recommending "comprehensive psychodiagnostic testing appropriate to the claimant's capability level").

[13]   R. at p. 248.

[14]   The Eighth Circuit Court of Appeals stated:  "'Rule out' in a medical record means that the disorder is suspected, but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."  *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citation omitted).

- problems in counting backward by fives, and

- poor concentration and focus.[15]

The ALJ said she was giving *significant weight* to Dr. Rodgers's opinion, but cautioned that her opinion had been based largely on Ms. Dubois's statements.[16]   The psychologist had to rely on these statements at least in part because she did not have the benefit of an I.Q. test.[17]   Thus, if Dr. Rodgers's opinions were not sufficient (as the ALJ said), the problem stemmed from the failure to order an I.Q. test as the psychologist had suggested and as the Plaintiff's attorney had proposed.

The Commissioner argues that an I.Q. test would have proved little because the Plaintiff's past ability to work as a telemarketer disproved mild mental retardation.   But the ALJ did not question Dr. Rodgers's diagnosis of mild mental retardation based on the

---

[15]     *See* R. at pp. 247-48.

[16]     R. at p. 21.

[17]     *See Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (requiring a remand because the ALJ did not adequately develop the record when the "ALJ's only stated reason for discounting [the claimant's] diagnosis of depression was that there were no medical tests to support it" and the ALJ "made no effort to obtain such tests or to determine what testing [the treating psychiatrist] might have performed").

Plaintiff's past work as a telemarketer.[18]   As a result, the Commissioner's rationalization cannot justify the absence of I.Q. testing.[19]

The Proposed Ruling

The ALJ erred at step three by failing to explain the Plaintiff's ability to effectively ambulate and by failing to order an I.Q. test.  In light of these errors, I recommend reversal and remand for further proceedings at step three.  The proposed remand would involve further development of the record through I.Q. testing and further findings regarding the ambulatory element of Listing 1.04.

Other Claims

The Plaintiff has also challenged the ALJ's assessment of credibility, medical opinions, and vocational testimony.  But the Court need not address these challenges in light of the need for reversal and remand at step three.

---

[18]   *See Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007) ("The fact that an individual is able to work, and has attended schooling beyond high school has been held in several cases not to be inconsistent with mild mental retardation." (citations omitted)).

[19]   *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (stating that "the district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself" (citations omitted)).

<u>Notice of the Right to Object</u>

Any party may file written objections with the Clerk of the United States District Court, Western District of Oklahoma.[20]  The deadline is December 15, 2012, and the failure to file timely objections would result in waiver of the right to appeal the suggested ruling.[21]

<u>Status of the Referral</u>

The referral is discharged.

Entered this 28th day of November, 2012.

Robert E. Bacharach
United States Magistrate Judge

---

[20]      *See* 28 U.S.C.A. § 636(b)(1) (West 2011 supp.).

[21]      *See* 28 U.S.C.A. § 636(b)(1) (West 2011 supp.) (deadline for objections); Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2) (deadline for objections); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991) (waiver of appeal).